UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-125-GWU

JERRY N. POWERS,     PLAINTIFF,

VS.     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

|   |   |
|---|---|
|   | Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921. |
| 4. | Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d). |
| 5. | Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a). |
| 6. | Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e). |
| 7. | Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1). |

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jerry N. Powers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of lumbar and cervical strain, diabetes mellitus with diabetic retinopathy and neuropathy, and legal blindness in the left eye. (Tr. 18). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Powers retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 20-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 43, tenth grade education, and semi-skilled work experience could perform any jobs if he were capable of "medium" level exertion with the ability to stand and walk about six hours and to sit about six hours in an eight-hour day, and also had the following non-exertional restrictions. (Tr. 195). He: (1) could never

climb ladders or scaffolds; (2) could perform no jobs requiring acute binocular vision or color discrimination; (3) needed to avoid all exposure to unprotected heights and hazards; and (4) needed to avoid concentrated exposure to vibration. (Tr. 195-6). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 196).

On appeal, this court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition. The plaintiff's Date Last Insured (DLI) was September 30, 2004 (Tr. 53), meaning that he had to establish disability before that date in order to be entitled to DIB. His SSI application is not affected.

As the defendant points out, the plaintiff presented no evidence of any medical treatment between 1997 and 2005, and no physician related any of his impairments back to the period before the DLI. Thus, he clearly failed to prove that he was under a disability before his disability insured status ended. The subsequent evidence must still be considered in relation to the SSI claim, however.

Mr. Powers alleged disability due to diabetes, hepatitis, problems with his legs and feet, problems with his left eye, high blood pressure, dizziness, and back and neck pain. (Tr. 56). At the hearing, he testified he had stopped working on May 1, 2003 due to a chronic back problem, which had become worse when he was

rear-ended. (Tr. 184). The accident had also given him a bad problem with his neck. He was diabetic and had problems with his feet and legs, which would give out. (Tr. 185). His feet and legs tingled and stayed cold. (Tr. 190). Since filing his case, a cataract had been removed from his left eye, which he described as doing "pretty good," although he felt his right eye was getting worse. (Tr. 191-2). He had been diagnosed with Hepatitis C in 1997, but had no way to travel to obtain treatment. (Tr. 192-4).

Despite this list of complaints, the plaintiff's only argument on appeal concerns visual limitations.

Dr. Angelia Thompson, an ophthalmologist, examined Mr. Powers in February, 2005 for complaints of blindness in the left eye, which he described as having slowly developed over the previous couple of years. (Tr. 118). His medical history was significant for diabetes and hypertension. Dr. Thompson's examination showed vision of 20/25 in the right eye and 20/400 in the left. The left eye had a cataract, and the retinas of both eyes were attached with micro-aneurysms. (Id.). Dr. Thompson's impression was non-proliferative diabetic retinopathy of both eyes, with the right eye being worse than the left, and a significant cataract in the left eye causing legal blindness. She suggested surgery for the cataract and control of blood pressure and glucose. (Id.).

Subsequently, the plaintiff was consultatively examined by Dr. Kip Beard, who also noted a severe cataract in the left eye with vision greater than 20/200 in the left eye and 20/40 in the right eye. (Tr. 131-2). Dr. Beard also diagnosed left eye blindness due to a severe cataract and indicated that the plaintiff would have a "significant" limitation on seeing, particularly on the left side. (Tr. 134-5).

Two non-examining state agency physicians reviewed the record. Dr. M. Allen Dawson did not indicate there would be any vision limitations, a conclusion which is at odds with the examining sources. (Tr. 136-43). Dr. P. Saranga did list specific visual limitations in the areas of far acuity, depth perception, accommodation, and color vision (Tr. 146-53).

The plaintiff focuses on the fact that the ALJ appeared to accept "the limitations assessed by the agency [as being] consistent with the objective findings as detailed herein." (Tr. 23). The plaintiff notes that the hypothetical restriction on jobs not requiring acute binocular vision or color discrimination leaves out the restrictions found by Dr. Saranga in certain areas, such as far acuity and accommodation. The plaintiff asserts that the ALJ was required by the applicable regulations to provide a rationale for a difference of opinion with a medical source. The defendant maintains that, taken as a whole, the ALJ's decision provided a sufficient basis for his findings.

07-125  Powers

     However, the court considers that the most significant factor in this dispute is the plaintiff's own testimony at the October 10, 2006 hearing that the cataract had been removed from his left eye and it was now doing "pretty good."  (Tr. 191-2).  While Dr. Thompson did diagnose diabetic retinopathy in addition to the cataract, she specifically stated that the left eye blindness was caused by the cataract and vision in the right eye was 20/25.  (Tr. 118).  Dr. Beard's impression was also "left eye blindness with severe cataract."  (Tr. 134).  Even if the ALJ's hypothetical restrictions were not supported by the <u>medical</u> evidence, the error is harmless in view of the plaintiff's testimony that the cataract had been removed.  Moreover, he did not seem to have any significant complaints about his left eye vision following the surgery.  In the absence of any specific evidence concerning continuing visual limitations in the left eye, or right eye vision which had significantly worsened since the eye examinations, a remand would serve no useful purpose.

     The decision will be affirmed.

     This the 19th day of March, 2008.

Signed By:
<u>G. Wix Unthank</u> 
**United States Senior Judge**